UNITED STATES *v.* COLUMBIAN ROPE CO. (No. 3725)[1]

United States Court of Customs and Patent Appeals, May 21, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Robert C. O'Grady* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument April 10, 1934, by Mr. Folks and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

GARRETT, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court holding certain machines and parts thereof, which the court found to have been "specially constructed and designed for exclusive use in preparing material to be ultimately made into cordage", dutiable at 30 per centum ad valorem under the "all other machines or parts thereof, finished or unfinished, not specially provided for", provision of paragraph 372 of the Tariff Act of 1922. The Collector of Customs assessed the merchandise at 35 per centum ad valorem, holding it dutiable under the "all other other textile machinery or parts thereof, finished or unfinished, not

---

[1] T. D. 47110.
[2] HATFIELD, J., did not participate in this case.

specially provided for", provision of the same paragraph, and the Government urges this classification to be the correct one.

Ten protests are involved, the machinery comprising various devices, such as drawing frames, roving frames, recuperators and a finisher card, together with extra parts and replacement parts for certain of the devices.

As we understand it, the particular devices imported do not comprise a complete assembly of all the machinery which is used in importer's plant, but only individual members, each (except the "parts") complete within itself, for performing one operation of the several operations requisite to making the finished product—cordage.

There were involved in the cases of *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T.D. 41490, and *United States* v. *Samuel Shapiro & Co.*, 18 C.C.P.A. (Customs) 165, T.D. 44374, issues somewhat analogous to the issue in the case at bar. In the *Whitlock Cordage Co.* case, *supra*, it was held that machines which manufacture textile fibers into yarns for making rope are classifiable as "all other textile machinery", under paragraph 372, Tariff Act of 1922, but that a machine which twists the yarns into strands and the strands into rope is not. In the *Shapiro & Co.* case, *supra*, it was held that machines used exclusively in the preparation of raw material, which material by a further process of manufacture on different machines, is made into twines and cords, are classifiable as "machines, not specially provided for", under said paragraph, rather than as textile machinery.

In both the above-named cases the same rules of law, of course, were followed, and the decisions turned upon the evidence as to facts which the respective records presented. In the instant case the trial court applied the rule stated in the decisions in the *Shapiro & Co.* case, *supra* (our own decision having affirmed the judgment of the trial court), which case is most nearly analogous to the instant case, and, upon its findings of fact, importer's contentions as to classification were sustained.

No new question of law is now presented, and so here, as in the former cases, the sole issue is one of fact.

We have examined the record quite carefully and find no reason for disturbing the judgment of the trial court. Two witnesses were called, one by the importer and one by the Government. The record discloses that at least two of the three judges of the trial court, who participated in the final decision, sat throughout the taking of the testimony (the third judge who sat with them having retired from the court before the decision was written), and they have weighed the testimony in the light furnished by their observation of the demeanor of the witnesses, their manner of testifying, and all other features incident to a trial.

The witness called by the importer was the superintendent of importer's jute mill. His training in the art had been quite complete and his experience extensive. His testimony was clear and pointed and seems to have covered the field fully. He helped to design features of some of the devices, superintended the installment of the machinery, and testified explicitly and in detail as to the use of each device, and as to what product each produced.

The Government has urged before us that this witness made a concession which weighs against importer's contention. While being cross-examined, the witness was asked as to the possibility of the slivers, produced by the machinery from jute and istle, being usable for making gunny sacks, bags or burlaps, and answered, "Not commercially; no, sir." Later in his testimony he said: "It cannot be used for making gunny sacking, but it can be used for making cloth."

The text of the query to which the last foregoing reply was made renders it somewhat doubtful whether the pronoun "It" was intended to refer to the machine or to the slivers produced by the machine. However, whatever the reference, we think the testimony of the witness, when considered as a whole, and fairly construed, amply sustains the finding of the trial court that the machines "are not commercially or practically adaptable for making textile yarns." We think the record sustains the contention of importer that they are not textile machines.

The witness called by the Government seems also to have had extensive experience in the manufacture of yarns for textile products, such as jute bagging, and also twines, ropes, and cords. He was not shown to have ever seen the machinery here involved, but testified, somewhat as an expert, from the various exhibits. As is pointed out by the trial court, he admitted "on cross-examination that while the machines which he had seen and those here under consideration function in the same way, nevertheless the gearing and rate of speed are important factors in determining the use for which they are specially constructed and designed; that he could not say that the machines he had seen in textile mills were identical with those here imported, and that in his own factory the machines were made to specification to meet his particular factory requirements."

As a matter of fact, we regard certain parts of the testimony of the Government witness, upon certain technical phases, as being corroborative of that of the witness for importer.

We think the decision appealed from is amply supported by the weight of the evidence, and since it is in conformity with the rules of law, appellant's assignments of error are not well taken.

The judgment of the United States Customs Court is *affirmed*.